FORD HOSPITAL, APPELLEE AND CROSS-APPELLANT, V. FIDELITY & CASUALTY COMPANY OF NEW YORK, APPELLANT: MARYLAND CASUALTY COMPANY, APPELLEE AND CROSS-APPELLEE.

FILED JUNE 23, 1921.   No. 21259.

1. Insurance: LIABILITY INSURER: STATUS. An insurer engaged in the business of writing liability insurance for profit is not a favorite of the law with the standing of individuals who become sureties or guarantors as mere accommodations.

2. ———: LIABILITY INSURANCE: CONSTRUCTION OF POLICY. In a suit on a liability insurance policy issued by an insurer engaged in the business of writing liability insurance for profit, a narrow or technical construction of the policy, or of the petition in a former action against insured for a liability covered by the policy, is not permissible to defeat the insurance.

3. ———: ———: HOSPITAL PATIENT. Where a child born in a hospital is returned three months later to receive nourishment from its mother, who had previously returned for treatment of ailments attending childbirth, the child, while in the exclusive care of the hospital, is a "patient," and not a mere licensee; the arrangement being that compensation for the treatment of the mother includes compensation for the care of the child.

4. ———: ———: "HOSPITAL TREATMENT." In a hospital with a department equipped for obstetrics, the bathing of a child born therein, if it thereby suffers bodily injury through the negligence or mistake of a hospital nurse while it is exclusively in the care of the hospital, may be "hospital treatment" within the meaning of those words as used in a policy of liability insurance.

5. ———: ———: ACTION: DEFENSE. A liability insurer agreeing to defend a suit against the insured for negligence, whether plaintiff's claim is groundless or not, does not, by making a defense as agreed, lose the right to assert that insured's loss is not covered by the insurance policy, where the insurer notifies insured in advance that such right is preserved.

6. ———: ———: ———: ———. Where a judgment for a loss resulting from negligence covered by a liability insurance policy is

satisfied by means of a secured note given in good faith, the insurer, if it violated its insurance contract by failing to defend a suit for negligence and by refusing to pay the loss or any part of it, may not be allowed to defeat the insurance on the ground that the judgment was not paid in money according to the literal terms of the policy.

7. ———: ———: ———: PARTIES. Insured may maintain an action on his liability insurance policy after he assigns, as collateral security for the payment of a note, any judgment he may obtain against the insurer.

8. New Trial: REMITTITUR: FINAL JUDGMENT. Where a judgment debtor, on his motion for a new trial, fails to comply with a conditional order permitting him to pay the judgment upon its being reduced by a required remittitur, and the judgment creditor, by reason of nonpayment, declines to file such remittitur, the judgment as originally entered becomes final.

9. Insurance: ACTION: DEFENSE. In a suit on a policy of liability insurance to recover a loss determined by a judgment for damages in a former action against the insured, transactions of the latter's attorneys in purchasing the judgment for themselves for less than its face *held* not available to the insurer as a partial defense under the circumstances outlined in the opinion.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Morsman, Maxwell & Crossman,* for appellant.

*John J. Sullivan, James E. Rait, George B. Thummel, George W. Pratt* and *Smith, Schall & Howell, contra.*

Heard before MORRISSEY, C.J., DAY, DEAN, FLANSBURG, LETTON and ROSE, JJ.

ROSE, J.

This is an action on two insurance policies, each for $5,000, to recover the amount alleged to be due from the insurers for a loss reduced to a judgment for $5,500, which Mary Jane Hannah, an infant, recovered against the Ford Hospital Company, the insured, in a former action for personal injuries. One of the policies was issued by the Fidelity & Casualty Company and the other by the Maryland Casualty Company. Both are defendants, and insured is plaintiff herein. Each insurer, referring to its

own policy, pleaded, among other defenses, that liability for the negligence resulting in the personal injuries to the child was not covered by its insurance, and that it was not bound by the judgment for damages. After the evidence had been adduced in this action on the liability insurance policies, each party requested a directed verdict in its favor. As a result the trial court excused the jury and entered judgment in favor of the Ford Hospital Company against the Fidelity & Casualty Company for the face of its policy, or $5,000, for interest amounting to $120.83, and for an attorney's fee of $400. The action was dismissed as to the Maryland Casualty Company. The Fidelity & Casualty Company has appealed.

The principal argument is directed to the merits of the defense that the Fidelity & Casualty Company, insurer, did not assume liability for the Ford Hospital Company's negligence in injuring the child, and that the insurer is not bound by the judgment for damages for personal injuries. This requires consideration of the issues, evidence and findings in the former action for damages and of the terms of the liability insurance.

The child was born in the Ford Hospital August 16, 1917, while its mother was an inmate and a patient there for the purposes of accouchement. Within two or three weeks the mother went to her own home, taking her child with her, but returned to the hospital alone from time to time for the temporary treatment of ailments resulting from conditions attending childbirth. For this purpose she returned to the hospital November 7, 1917, but was detained until the next day on account of having to undergo an operation. In the meantime the child was brought to the mother for nourishment and was left in the exclusive care of the hospital. While a hospital nurse, in the performance of her duties, pursuant to a rule of the hospital, was giving the child a bath November 8, 1917, its left hand, through the negligence or the mistake of the nurse, came in contact with a hot appliance and was severely burned. It was for the injuries thus inflicted

that the child recovered in the former suit for damages the judgment against the Ford Hospital Company for $5,500 It was alleged in the petition in the former case mentioned, among other things, that—

"Before and after the birth of said child at said hospital, its mother and said child were inmates of said hospital for some months under treatment; that said child remained at said hospital with its mother during said period of treatment; that during all of the time that the child's mother was at said hospital she paid for the services rendered by said hospital in their care and treatment."

The acts constituting the negligence on which the damages for personal injuries are based were pleaded in the petition of the child and denied in the answer of the Ford Hospital Company.

Was the liability of the hospital for the damages described covered by its policy in the Fidelity & Casualty Company, insurer? The hospital was insured "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any patient or patients at the hospital," says the policy, "in consequence of any malpractice, error, or mistake made, while this policy is in force, within the said hospital,   *   *   *   by the assured in the giving of medical, surgical, or hospital treatment, or by any person employed by the assured, in the giving of any such treatment."

It is argued that, within the meaning of this insuring clause, the child was a mere licensee when injured, that it was not a "patient," that it was not receiving "hospital treatment," that the petition in the action for damages alleged the child was an "inmate," but not that it was a "patient," that negligent injury to the child was not within the terms of the insurance contract, and that a loss covered by the policy was not within any material issue in the action brought by the child against the hos-

pital to recover damages for personal injuries. • Is the position thus taken tenable?

The Fidelity & Casualty Company insured the Ford. Hospital Company. The latter had a department equipped for obstetrics. In that department the mother was both an inmate and a patient. The child was expected. It was born helpless. It had the same right to room and care as the mother, and was not a mere licensee. Both mother and child were under the care of hospital nurses. The liability of the hospital for mistakes or negligence in "hospital treatment" extended to both. These conditions and relations were obvious in a hospital with a department equipped for obstetrics. Accouchement included the right of the mother to return for any hospital treatment required as a result of conditions attending childbirth, and compensation for room and services furnished to her included the care of the child in the meantime while necessarily in the hospital. These conditions and relations existed when the child was injured. After going to her home the mother returned for treatment and was detained for an operation. In the meantime the child was brought to its mother for nourishment. Both were then under the care of hospital nurses. A rule of the hospital required a bath for the child. The mother was not consulted about the rule or its enforcement, and the child was not accountable. The bath was usual, necessary and proper. When given, it was "hospital treatment" within the fair import of that term as used in the policy. For the purpose of hospital care, while the mother was in charge of hospital nurses, the helpless child was both an "inmate" and a "patient" when being bathed by a hospital nurse in compliance with an established rule. Pecuniary gain is not the sole aim of a modern hospital equipped for obstetrics. It has a mission requiring a degree of care prompted by the ordinary dictates of humanity. Of this all are aware. The precaution which resulted in the procuring of liability insurance covering a loss for a negligent injury to the mother would naturally

suggest protection from a like injury to her child. This liability, it may be inferred, was within the contemplation of the negotiating parties, and it is fairly covered by the terms of their written contract. The nurse, while bathing the child in compliance with a rule of the hospital, was guilty of negligence. She made a "mistake" within the meaning of the insurance policy when she allowed the hand of the helpless child to come in contact with a hot appliance.

The trial judge in the former case of Mary Jane Hannah, an infant, plaintiff therein, against the Ford Hospital Company, defendant therein, permitted the child to recover damages only upon a finding that it was an "inmate" under the exclusive care and control of the hospital, and he submitted to the jury for a special finding the question, "Was the plaintiff at the time she sustained her injuries a patient in defendant's hospital?" The answer thereto was "Yes." The facts outlined are inferable from the evidence in the case at bar and are established by the findings of the trial court.

The Fidelity & Casualty Company, insurer, is engaged in the business of writing liability insurance for profit. It is not a favorite of the law with the standing of individuals who become sureties or guarantors as mere accommodations. No narrow or technical construction of the pleadings in the former action for damages or of the policy in the case at bar is permissible to defeat the insurance. For the purposes of the liability insurance the word "inmate" as used in the petition to recover damages for personal injuries and the word "patient" as used in the policy of insurance, to repeat what has already been said, fairly include both mother and child. The conclusions, therefore, are that the relation of hospital and patient existed between the Ford Hospital Company and the child at the time of the latter's injury, that the hospital was liable for resulting damages, and that the policy of the insurer covered the loss on account of that liability to the extent of $5,000.

Could the insurer have defended the action for damages and at the same time have preserved its right to assert that it did not insure the loss? The insurer by its policy had bound itself to defend any suit against the hospital company to enforce any claim for a liability covered by the insurance, "whether groundless or not." The action against the hospital for damages was a suit to enforce such a claim. The action was well founded, but, even if it had been "groundless," the insurer had agreed to defend it. Though notified of the action for damages and re-quested to make a defense, the insurer refused to do so, or to participate in a settlement of the controversy, or to supersede the judgment or to pay any part of it. The in-surer could have performed its contract to defend the former action for damages without losing its right to in-terpose the defense that insured's loss was not covered by the policy. In a note in 34 L. R. A. n. s. 491, the cor-rect rule is stated as follows:

"An indemnity insurer will not be estopped to set up the defense that the insured's loss was not covered by the contract of indemnity, by the fact that the insurer par-ticipated in the action against the insured, if, at the same time, it gives notice to the insured that it does not waive the benefit of such defense." *Sargent Mfg. Co. v. Trav-elers Ins. Co.,* 165 Mich. 87.

There was no justification whatever for the insurer's failure to perform the contract to defend the action against the hospital.

On one of the assignments of error it is argued that there is no judgment against the hospital in the former suit for damages, and that therefore the insurer is not liable in the present action on its policy. This contention is based on an order directing the child, upon the hos-pital's motion for a new trial, to file a remittitur for $2,000 and permitting the hospital to satisfy the judgment for damages in the sum of $5,500 by payment of $3,500. The hospital, owing to financial stress and incumbrances on its property, was unable to pay $3,500 or to furnish a

supersedeas, and the insurer upon demand refused to do either. The child, not having received payment, did not file the remittitur. The requirements for it were conditional. There was no compliance by the hospital or by the insurer with any of the conditions. The judgment for damages in the sum of $5,500, which had been entered on a verdict in favor of the child, therefore, remained in force.

It is further argued that the present action to recover insurance is not maintainable because the insurer's liability under the policy depends on insured's payment of the judgment in money—an unperformed condition. To the extent of $5,000 the judgment for damages in the sum of $5,500, if paid by insured in money, was the adjudicated measure of the insurer's liability under its policy. The insurer had an opportunity to discharge its liability to the hospital and to satisfy the judgment by the payment of $3,500, but upon demand refused. The hospital was unable to raise the money to make such a payment and its attorneys afterward bought the judgment with their own funds and satisfied it of record after having taken a mortgage on the hospital property for $5,601.25. The judgment therefore was paid. In these respects counsel for the hospital acted in good faith, as shown by proper findings of the trial court. The policy declared that the hospital was insured "against loss from the liability imposed by law upon the insured for damages on account of bodily injuries or death suffered by any patient or patients at the hospital," in consequence of error or mistake in hospital treatment. The insurer not only denied liability for any loss under its policy, but violated its contract to defend the suit for such a loss, even if groundless. Consequently the insurer is not in a position to insist on payment in money, under the circumstances, as a condition of its liability. It is now well established by precedent that an insurer, having thus violated its contract to defend a suit against the insured, may not be allowed to defeat a recovery on the policy

by objecting to the manner in which the judgment was paid.

Another argument is directed to the propositions that the hospital parted with its liability insurance before it brought its suit on the policy, that it is not the real party in interest, and that consequently it cannot maintain the present action. On these issues the findings of the trial court in favor of the hospital in the present case are supported by evidence that insured's assignment did not transfer title to the policy, that insured, as collateral security for its indebtedness to its counsel, assigned to them any recovery or judgment it might obtain against the insurer, that insured and the latter's assignees so understood their transaction, that the assignment was openly made in good faith, and that the present action to recover the insurance was properly prosecuted in the name of the insured.

It is finally insisted that in any event the recovery on the insurance policy issued by the Fidelity & Casualty Company should not exceed $3,500, the amount for which the attorneys for the hospital bought the judgment from the child. In this connection it is argued that counsel for the hospital acted for their client; that it was the duty of the hospital to make reasonable efforts to lessen the burden of the insurer; that beyond the loss paid in money by the hospital the latter could make no profit out of its insurance contract; and that its counsel could not speculate on the business or interests of their client. Is the partial defense to the claim of $5,000 for the loss covered by the policy available to the insurer? The money invested by the hospital's counsel in the judgment was not the money of their client. It was their own. They thus invested $3,500, after the insurer upon demand had refused to do so, and after the hospital had tried in vain to raise that amount of money while it would satisfy the judgment. What the insurer is demanding is the right to appropriate to its own use the profits on the personal investment of $3,500 by the attorneys for the hospital and

also their services in negotiating in their own behalf for the purchase of the judgment. In other words, the insurer calls on the insured for a credit which, through its inability to raise money, it was unable to procure for itself. The record discloses no good reason for allowing the insurer to make use of the individual investments and the personal services of the attorneys who represented the hospital, the adversary of the insurer in the litigation to recover the insurance. Neither the hospital nor its counsel, whether acting separately or jointly, did anything unlawful to make either accountable to the insurer as trustee in the purchasing of the judgment for damages. The evidence shows, and the trial court found in effect, that the hospital and its counsel acted in good faith. The law did not prohibit the attorneys who represented the hospital in the action on the policy from purchasing the former judgment for damages, nor prevent the insured from ratifying the purchase for the purpose of delaying the execution sale of the hospital until the latter could raise funds to pay the judgment in full. The confidential relations between the attorneys for the hospital and their client, and the ethical standards for testing conduct affecting those relations, are not invokable by the insurer under the circumstances mentioned. On this phase of the case, therefore, the conclusion is that the confidential relations between the hospital and its attorneys and the transactions of the latter in their own behalf in purchasing the judgment for damages are not available to the insurer as a partial defense. It follows that the Fidelity & Casualty Company, to the extent of its policy for $5,000, interest and costs, is bound by the judgment as rendered in favor of the child for damages.

The Maryland Casualty Company and the Ford Hospital Company filed cross-appeals, but discussion thereof is unnecessary in view of the decision on the appeal of the Fidelity & Casualty Company. No error prejudicial to the latter has been found in the record, and the judgment against it is                                    AFFIRMED.

FLANSBURG, J., dissenting.

I cannot agree to the opinion nor to the conclusion reached by the court in this case. To make clear my reasons, I wish to restate some of the facts.

The defendant casualty company issued its policy of insurance to indemnify the Ford Hospital Company against loss for any payments it should make in money to satisfy judgments which might be rendered against it, growing out of personal injuries received by patients while in the hospital.

While this policy was in effect, one Hannah sued the Ford Hospital Company and recovered a judgment for $5,500. Shortly thereafter the trial judge entered a remittitur of $2,000 from the judgment, and ordered the defendant to pay $3,500 into court on or before December 28, 1918, and that the plaintiff should accept that amount in full settlement of the judgment. The Ford Hospital Company then employed Sullivan & Rait, as its attorneys, with the object of bringing about a settlement with Hannah, and of procuring reimbursement from the Fidelity & Casualty Company. The Fidelity & Casualty Company took the position that its policy covered only such judgments as were based upon claims for damages for personal injuries received by patients in the hospital, and that Hannah was not a patient, and it therefore refused to provide money for the payment of the judgment. The Ford Hospital Company, through the testimony in its behalf, asserts that it had been unable personally to raise the $3,500 required to settle the judgment, though it appears that it made only one application for a loan, and that it did not apply to any bank.

Mr. Rait, one of the attorneys for the hospital company, then, without informing that company of his intended action, took up the matter with Hannah, and on December 24, 1918, before the period for remittitur had expired, paid to Hannah $3,526.82, and privately and in his own right purchased the judgment and had it assigned to Sullivan & Rait. These attorneys thus pur-

chased for themselves a judgment against their own client in a suit in which they were employed to defend their client. Each of the attorneys furnished half of the money. The assignment of the judgment was also, on the motion of the parties to the assignment, approved by the court in which the judgment stood.

Thereupon, Mr. Rait caused execution to issue against his client, the Ford Hospital Company, though he testified that this company had not, until that time, been given notice of the purchase by, or of the assignment of the judgment to, its attorneys.

When confronted by this levy of execution, the hospital company, with the alleged purpose of satisfying the judgment, gave its note to Sullivan & Rait for $5,601.25, payable on demand, and secured the same by a mortgage on its real and personal properties. It is not disputed that the note was as "good as gold" and "amply secured;" Doctor Ford's testimony showing that the reasonable market value of the Ford hospital was $250,000, against which there were mortgages aggregating only $145,000.

The note for $5,601.25, given by the Ford Hospital Company to its attorneys, has not been paid. In fact, though the note is payable on demand, no demand has been, and it is apparent no demand ever will be, made for its payment, since it is the manifest intention of the attorneys, payees of the note, to collect from the Fidelity & Casualty Company, and not from the Ford Hospital Company. The Ford Hospital Company, with that end in view and as security for the note, assigned to Sullivan & Rait whatever recovery could be had against the Fidelity & Casualty Company on the indemnity policy. The relation of these attorneys to the Ford Hospital Company, as attorney to client, has continued without interruption from the time that they were first employed, throughout the period of the transaction just referred to. It is needless to say of these attorneys, whose standing in the profession is high, that what was done by them was not with the purpose or intent of compelling their own client to pay them a profit

of $2,000 in the transaction. Mr. Rait stated that his object was both to profit by the transaction and to educate the insurance company, which he believed was refusing to pay a just claim. These attorneys would not attempt to make a profit by such a transaction, had their client been called upon to pay it. Moreover, the law would not allow of such a profit.

When they purchased the judgment, their client, the Ford Hospital Company, was, under the law, because of the trust relation, entitled to receive the benefit of that transaction. The client, Ford Hospital Company, could, of course, if it desired, and so far as it was individually concerned, either pay to its attorneys what they had paid for the judgment, and defend against all excess above that amount, or waive its defense to the $2,000 item in its attorney's claim for $5,601.25, and pay to them the judgment in full, but it certainly could not, by such a voluntary waiver of its right to defend against the $2,000 excess, throw away the rights of the Fidelity & Casualty Company, which company was, by a contract known to all the parties, subrogated to the rights and entitled to all the protection that the hospital company itself could and should, in all fairness, have asserted. Had the Ford Hospital Company expected to be required to pay the $5,600 out of its own pocket, it is obvious indeed that it would not have waived its defense and allowed its attorneys to make a profit of $2,000 off of it, nor would its attorneys ever have made, or even thought of attempting to make, such a collection. It was the clear and positive duty of the Ford Hospital Company to assert every defense it had and was aware of, and to reduce its obligation, and consequently the obligation of the Fidelity & Casualty Company, all that it could. Before this company can be generous to its attorneys, it must be just to its trust. It is a fundamental rule in such cases that the insured must reduce its liability all that it possibly can, and that it cannot voluntarily waive legal defenses. When it voluntarily pays more than is required, it certainly cannot re-

cover from the insurance company that excess which it has gratuitously given.

In the case of *St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co.*, 201 U. S. 173, where it had been claimed that the insured had paid more than was legally required, though in that particular case there was no proof of that fact, the court said (p. 182) : "We assume that the settlement was reasonable, and that the plaintiff could not expect to escape at less cost by defending the suits. If this were otherwise *no doubt the defendant would profit by the fact.* The defendant did not agree *to repay a gratuity, or more than fairly could be said to have been paid upon compulsion."*

What the Ford Hospital Company has agreed to pay, over and above the amount of money paid by its attorneys in the purchase of the judgment, it has done voluntarily. The promise as to such excess could not have been enforced, nor could the payment of the excess have been compelled by any attempted execution on the judgment.

As a further proposition, let us look particularly to the policy, written by the Fidelity & Casualty Company. It contains express provisions calculated to protect it against just such transactions as this. In the first place the policy is an indemnity, not a liability, policy. It indemnifies only against "loss that the assured has actually sustained by the assured's payment in money of a final judgment rendered after a trial in a suit against the assured for damages."

The parties to the indemnity policy had the right to freedom of contract. The primary obligation of the insurance contract was to indemnify against insured's "payment in money of a final judgment." The obligation of that promise can neither be enlarged nor diminished by a court without doing violence to the rights of the parties to it. Had this been a general liability policy, with a primary obligation to indemnify against loss or liability, resulting from personal injuries, or judgments rendered against the insured, and then had the policy been

further hedged about by conditions which, if not complied with by insured, would release the company from the obligation theretofore expressly assumed, then of course the company might, by its action, waive or be estopped from insisting upon a compliance with those conditions, and yet be bound by its general obligation which it had voluntarily undertaken to perform. But I am unable to see how the court has a right in any case to write an entirely new *obligation* into a contract that was not originally there and nowhere voluntarily assumed by the parties.

The Ford Hospital Company has not paid the judgment in money. It has, therefore, not sustained the loss covered by the policy. It has, on the other hand, given a demand note which, it is quite apparent, it never expects to be called upon to pay. Looking at the substance, rather than the form, this is a suit primarily by the attorneys in the name of the Ford Hospital Company against the Fidelity & Casualty Company to recover moneys in satisfaction of a $5,500 judgment, which they have purchased for $3,500, and which judgment has never been paid in money by the Ford Hospital Company, the note given by it being only a promise, intended to be satisfied by funds to be recovered from the Fidelity & Casualty Company.

The specific obligation of the contract of the indemnity company is to reimburse the Ford Hospital Company for what it shall be *compelled* to *expend in money* in satisfaction of such a judgment.

In 4 Joyce, Law of Insurance (2d ed.) 4822, sec. 2800, it is stated: "A distinction exists  *  *  *  between an indemnity against loss or damages and an indemnity against liability for damages, and even though the object of both is to save insured from loss or damage the legal consequences differ, for in the former case payment is essential, while in the latter it is not."

Where, in a policy of indemnity, the obligation is to reimburse the insured for moneys actually expended, it is, by the great weight of authority, the settled rule that the

assured cannot recover on the policy until a loss is sustained by way of an actual money payment. If respect is to be given to a contract obligation, such must be the rule. *Fidelity & Casualty Co. v. Martin*, 163 Ky. 12; *Elliott v. Ætna Life Ins. Co.*, 100 Neb. 833.

Though in the case of *Elliott v. Ætna Life Ins. Co.*, *supra*, this court held that an indemnity company, under certain circumstances, and where it assumed control of the defense of the case, was estopped to deny that the primary obligation of its contract was other than as written, the effect of that decision at most is only to assert an exception to a well-recognized general rule, and an exception which could have no application to the facts in this case.

In some cases also it has been held, and because no substantial rights were there invaded, that a forced sale of property of the judgment debtor will be considered as a payment in money, since the property is actually and presently appropriated by the judgment creditor, and since such property has a money value which may be ascertained. *McBride v. Ætna Life Ins. Co.*, 126 Ark. 528; *Stag Mining Co. v. Missouri Fidelity & Casualty Co.*, 209 S. W. (Mo. App.) 321.

None of these cases, seeming to qualify the rule, has any application here. A present promise to pay money on demand cannot, at least until there has been an actual appropriation of money or property by the judgment creditor, ever be considered to be a present payment in money, as within the meaning or spirit of those provisions found in such indemnity contracts.

Judge Cornish, in his dissenting opinion in *Elliott v. Ætna Life Ins. Co.*, *supra*, well said (p. 839) : "Now, when parties have freely contracted, the courts must abide by the terms of the contract, or tell why not; otherwise, the court makes the contract for the parties and becomes a legislative body. A mere inequity as between the parties is not sufficient. Some ambiguity or repugnancy must be shown, or that it is unconscionable, against public

policy, or otherwise forbidden by law. Hard cases make bad law. * * * The insurer, on grounds of business policy, may prefer to make sure that the money goes to the injured employee. Without the provision, it may go elsewhere."

For the reason, then, that the note given by the Ford Hospital Company was not a compulsory payment as to its entirety, and since it was not a payment in money, it cannot justify an action for reimbursement against the Fidelity & Casualty Company.

It is my opinion that the action is premature and should be dismissed.