**CONTINENTAL CASUALTY COMPANY, Plaintiff,**

v.

**Dale H. REED, Irving J. L. Anderson and Irving J. L. Anderson Company, a Minnesota corporation, and Capitol Indemnity Corporation and M. J. McGough Company, Defendants.**

**No. 3–68–Civ–213.**

United States District Court
D. Minnesota,
Third Division.

Dec. 9, 1969.

insurance agency and its two employees, now pending in this Court, that a plumbing contractor's performance bond was issued without authority by the Anderson Insurance Agency and it seeks recovery of the amount, some $82,000.00, it claims to have been obligated to pay on the performance bond when the plumbing contractor defaulted.

In this action, the plaintiff seeks a declaration that it is not obligated to defend its insured or to pay a judgment if one is obtained because of the claimed wrongful action of the Anderson Insurance Agency in issuing the performance bond to the plumbing contractor without the prior required approval of C.I.C.

The plaintiff claims that the conduct of the Anderson Insurance Agency in issuing the surety bond was not a "negligent act, error, or omission" as those terms are used in the coverage section of the policy, and/or was a "dishonest, fraudulent, criminal and malicious act or omission" on the part of the insured and hence came within the exclusion clause of the policy.

All of the defendants claim exactly the opposite, assert that the insuring clause of the policy covers the actions of the insured and that the conduct was not excluded by the exclusions clause and hence the plaintiff is obligated to defend, and to pay any judgment obtained.

The errors and omissions policy was in effect on October 5, 1965 when the Anderson Insurance Agency issued the performance bond on James K. Gustafson, dba Northfield Plumbing and Heating Company, (Northfield) who later defaulted on his plumbing and heating contract. The pertinent parts of the policy are set out below.

I. Coverage.

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as a result of any claim made against the insured or any other person for whose acts the insured is legally liable because of any negligent act, error or omission in the conduct of his business as an insur-

Meagher, Geer, Markham & Anderson, Clyde F. Anderson, Minneapolis, Minn., for plaintiff.

Bruce Gillman, Madison, Wis., for defendant Capitol Indemnity Corporation.

Irving Shaw, St. Paul, Minn., for defendants Dale H. Reed, Irving J. L. Anderson and Irving J. L. Anderson Co.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The basic issue posed by this Declaratory Judgments action seeking construction of an "errors and omissions" insurance policy covering the defendant corporate insurance agency is whether the claimed misconduct of the insured is excluded from coverage by the clause of the policy which excludes liability caused by the "dishonest, fraudulent, criminal and malicious action or omission of the insured."

The jurisdictional requirements are met by the diversity of citizenship of the parties, and the requisite amount in controversy.

Plaintiff issued the "errors and omissions" policy. The defendants are the insured corporate insurance agency, two of its owner-employees individually and the surety carrier which they represented as agents. The surety carrier, Capitol Indemnity Corporation (C.I.C.), asserts in a separate action against the

ance agent, general insurance agent, insurance broker, or a notary public.

II. Defense settlement supplementary payments.

As respects such insurance as is afforded by the other terms of this policy the company shall:

(a) defend in his name and behalf any suit against the insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. * * *

III. Definitions.

(a) The unqualified word 'insured' wherever used includes not only the named insured but also any partner, executive officer, director, stockholder, or employee thereof while acting within the scope of his duties as such. * * *

IV. Exclusions.

This policy does not apply:

(b) In respect to any claim brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of the insured or any employee of the insured:

It is not disputed that the Irving J. L. Anderson Company was an agent of the Capitol Indemnity Corporation in the State of Minnesota and authorized to issue various types of insurance coverage, during the time in question or that Irving J. L. Anderson and Dale Reed both of whom work for the Irving J. L. Anderson Insurance Agency were licensed agents of the Capitol Indemnity Corporation. Anderson and Reed were each authorized by Capitol Indemnity Corporation to write performance bonds used by contractors in the construction industry subject however to Capitol Indemnity Corporation's policy underwriting regulations. Both Anderson and Reed were furnished with necessary forms including Power of Attorney Forms previously executed by the President of the Capitol Indemnity Corporation. Such Power of Attorney was limited to writing bonds not in excess of $200,000.00.

On October 5, 1965, Reed, at the request of Anderson, executed a Capitol Indemnity Corporation policy in the amount of $189,889.00 on Northfield as principal committing C.I.C. as surety to M. J. McGough Company in that amount to assure the proper performance of a construction contract held by Northfield in connection with the construction of a women's dormitory at Carleton College, Northfield, Minnesota.

One of the underwriting requirements of C.I.C. that pertained to the writing of performance bonds was that the agent acquire specific authority from the C.I.C. bond underwriting department before writing a contract bond unless the agent had previously been clothed by C.I.C. with appropriate discretionary "field authority."

The evidence shows that the Anderson Agency did not receive such specific authority to write the Northfield performance bond. It is the position of C.I.C. that its officers specifically prohibited the Anderson Agency from writing the Northfield bond. Irving J. L. Anderson claims that he had at least implied "field authority" to write the Northfield bond. There is some evidence to support his claim.

It would serve no useful purpose to detail all of the evidence. It is sufficient to say that it appears clear that the Anderson Agency was not granted specific authority to write the Northfield bond. The most that can be said for the Anderson Agency is that Irving J. L. Anderson had some basis for believing, as a result of his prior dealings with the bond underwriting officers of the Capitol Indemnity Corporation, that he possessed some discretionary field authority.

From all of the evidence, it appears that Irving J. L. Anderson and his brother-in-law, Dale H. Reed, breached their contract with C.I.C. when they issued the performance bond to Northfield. It is clear, however, that neither Reed nor Anderson had any intent to harm or injure

C.I.C. or that either of them gained any profit or advantage from issuing the performance bond other than the normal agent's commission. Anderson promptly reported the issuance of the Northfield bond to C.I.C.

There is a dearth of pertinent decisions upon the issue here. This well may be due to the relatively recent introduction and use of the professional protection insurance policy.

Plaintiff cites many decisions construing Fidelity Insurance policies, *i. e.*, United States Fidelity & Guaranty Co. v. Egg Shippers' Strawboard & Filler Co., 148 F. 353 (8th Cir. 1906). But these are not pertinent or helpful by analogy.

The defendant C.I.C. cites cases which give a broad interpretation to the insuring clause such as here and a narrow interpretation to similar exclusion clauses. Thus, it is urged that legal fraud, breach of contract, tortious interference with a contract and assault and battery have all been construed to be included in the coverage of an "errors and omission" policy even though such constituted intentional acts or intentional torts. National Surety Corp. v. Musgrove, 310 F.2d 256 (5th Cir. 1962), involving an identical policy; Runyan v. Continental Casualty Co., 233 F.Supp. 214 (D.Ore.1964), involving an engineer's errors and omission policy; Sommer v. New Amsterdam Casualty Co., 171 F.Supp. 84 (E.D.Mo.1959); Cagle v. Commercial Standard Insurance Co., 427 S.W.2d 939 (Texas Civ.App. 1968), also involving an identical policy.

The Capitol Indemnity Corporation also calls our attention to some cases which hold that the plaintiff's errors and omissions policy covers more than mere negligence. Harris v. Fireman's Fund Indemn. Co., 42 Wash.2d 655, 257 P.2d 221 (1953); Ford Hospital v. Fidelity & Casualty Co. of New York, 106 Neb. 311, 183 N.W. 656 (1921); Sutherland v. Fidelity & Casualty Co. of New York, 103 Wash. 583, 175 P. 187 (1918).

But basically decision here must rest upon a fair reading of the policy in the light of the facts shown by the evidence.

In my view the actions of Anderson and Reed were wrong, but not criminal or fraudulent. Anderson was guilty of wishful thinking in believing C.I.C. would approve Northfield as a risk. He should have known better in view of Northfield's poor financial situation and financial problems with another surety company. It may be reasoned that he was intent upon "cleaning up his desk" before leaving for a long-planned hunting trip the same day. He acted precipitously and imprudently in causing the bond to issue upon the flimsy reasoning that the home office would approve it notwithstanding Northfield's poor financial condition or upon the assumption that he had "field authority" to do so. He wanted the Northfield business and desired to maintain his considerable reputation among plumbing contractors in the state, many of whom he served. Anderson clearly violated his employer's instructions and breached his contract with C.I.C.

All of this, however, does not spell fraud or criminality.

Plaintiff urges that Anderson's conduct was intentional and went beyond mere "negligent act, error or omission" and hence is not covered by the insuring clause. It urges that an "errors and omissions" policy such as this is intended to cover inadvertences and mistakes, not intentional and deliberate acts beyond authority.

But even assuming that Anderson's conduct be categorized as intentional, a reading of the policy does not exclude such intentional misconduct but only "dishonest, fraudulent, criminal or malicious" acts. In order to be excluded by this language, it seems to the Court that Anderson's conduct would have to be performed with intention to harm C.I.C. or to personally profit from it. It wasn't.

If plaintiff did intend by the policy terms to cover intentional acts of misconduct, it could have included such in the exclusion clause in addition to "dishonest, fraudulent, criminal or mali-

cious." But it didn't do that. We must construe the policy as it has been written; and liberally in the insured's favor and strictly against the insurer. See cases cited in Modern Federal Practice Digest, Insurance, 146.7, *et seq*.

It is well established that policy words of inclusion are to be broadly viewed and words of exclusion are to be narrowly considered. This is an accepted principle of insurance law and a "fact of insurance life." Great Central Ins. Co. v. Marble, 369 F.2d 615 (8th Cir. 1966).

So viewing plaintiff's policy against the evidence, I conclude that the policy insuring clause covers, and the exclusion clause does not exclude, the conduct of the defendants here. Hence it is declared that plaintiff has the duty to defend its insured, and "to pay on behalf of the insured all sums which the insured shall become liable to pay" as a result of such conduct.

Let judgment be entered accordingly, the form of which defendants' counsel shall submit to the Clerk.

These expressions are intended to comply with the requirements of Rules of Civil Procedure 52(a).