127 Cal.App.2d 198 (1954)
EMMETT R. BURNS et al., Appellants,
v.
AMERICAN CASUALTY COMPANY (a Corporation) et al., Respondents.
Civ. No. 15850. 
California Court of Appeals. First Dist., Div. One. 
Aug. 19, 1954.
 Edward A. Friend for Appellants.
 Bronson, Bronson & McKinnon for Respondents.
 Edmund G. Brown, Attorney General, and Harold B. Haas, Deputy Attorney General, Amici Curiae on behalf of Respondents.
 BRAY, J.
 In a taxpayers' suit for recovery of insurance premiums paid by the county of Santa Clara, plaintiffs appeal from a summary judgment in favor of defendants.
 Principal Questions Presented
 1. Do insurance policies covering a county hospital's liability for malpractice, mistake, error or negligence, cover liability under section 53051, Government Code?
 2. Was a summary judgment proper where premiums paid by the county were for insurance policies covering hazards for which the county could be liable as well as those for which it could not be liable?
 Record
 The action was dismissed without prejudice as against all defendants except four: American Casualty Company, Fireman's Fund Indemnity Company, and two groups of subscribing Underwriters at Lloyd's London. The complaint in the first count alleges that plaintiffs as taxpayers sue on behalf of themselves and all other taxpayers of the county. It alleges the procurement by the board of supervisors of certain policies of "malpractice insurance" covering the Santa Clara County Hospital, as follows: from defendant American Casualty Company for the period August 26, 1946, to August 26, 1949; from defendant Fireman's Fund for the period August 26, 1949, to December 22, 1949; from one group of Underwriters at Lloyd's for the period December 22, 1949, to December 22, 1950, and from the other group two policies for the period December 22, 1950, to December 22, 1951. The amounts paid for these policies are set forth. It is alleged that these policies "to the extent that they insure the Santa Clara County Hospital against malpractice constitute an illegal expenditure of public funds ... for the reason that under the law of California the Santa Clara County Hospital is not and cannot be held liable for malpractice." Demand was made upon the district attorney to institute this suit. He refused to do so. Judgment is asked against the respective defendants for the premiums paid each respectively, "or such part of *201 that sum as paid for insuring the Santa Clara County Hospital ..." The second count incorporates the entire first count and then alleges that doubt exists as to whether the American Casualty and Fireman's Fund policies cover staff physicians and other employees of the hospital, and as to what portion of the premiums of all policies is attributable to the hospital and what portion to the staff physicians and other employees of the hospital. The prayer asks that the court resolve this doubt.
 Defendants answered, attaching photostatic copies of the policies involved and alleging that the policies afforded the county substantial and valuable protection against liability. All parties moved for judgment on the pleadings.
 Contentions
 Plaintiffs contend that public funds spent as insurance premiums may be recovered if the liability so insured is nonexistent, citing Opinion No. 2995, I Opinions of the Attorney General of Ohio, 303 (1931); Board of Education v. Commercial Casualty Ins. Co., 116 W.Va. 503 [182 S.E. 87]; Adkins v. Western & Southern Indem. Co., 117 W.Va. 541 [186 S.E. 302]. Defendants do not challenge the existence or extent of the rule as stated by plaintiffs. Defendants do not claim that in this case, at the time the insurance was purchased, there existed a reasonable doubt as to liability of a county for malpractice, but assume that the county was not then liable for such tort. For these reasons we do not pass on the scope of the stated rule, but will, as do the parties, assume its application to the facts of this case. Plaintiffs then contend that the policies in question covered the county for malpractice only by the hospital and that as the county cannot be held liable for such malpractice, the premiums must be refunded. It is the theory of the defendants that by their terms the policies covered more than hospital malpractice and gave the county a substantial protection against liability, particularly for liability under section 53051, Government Code, for dangerous or defective condition of property. That there can be such liability, see concurring opinion in Madison v. City & County of San Francisco. 106 Cal.App.2d 232, 252 [234 P.2d 995, 236 P.2d 141]; Bauman v. San Francisco, 42 Cal.App.2d 144 [108 P.2d 989].
 What Do Policies Cover?
 It has been held frequently that a county or its board of supervisors is not liable for injury incurred by any patient *202 in a county hospital due to malpractice. (Latham v. Santa Clara County Hospital, 104 Cal.App.2d 336 [231 P.2d 513]; Madison v. City & County of San Francisco, supra, 106 Cal.App.2d 232; Talley v. Northern San Diego County Hospital Dist., 41 Cal.2d 33 [257 P.2d 22].) This brings us to a study of the policies themselves. They are all made in favor of the county and the members of its board of supervisors.
 The insuring clauses follow:
 American Casualty Company:
 "Bodily injury, shock or mental anguish, including death at any time resulting therefrom, sustained during the policy period by any person or persons (a) while being treated at the premises and arising out of malpractice, error or mistake, including personal restraint, committed in connection with such treatment or (b) because of the performance of an autopsy at the premises. Premises as used herein shall mean the premises described in the declarations on the reverse side hereof. Medical or surgical treatment rendered in connection with ambulance service and Public Health Service shall be deemed to occur 'at the premises.' "
 Fireman's Fund Indemnity Company:
 "Liability for Malpractice, Error or Mistake."
 "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of malpractice, error or mistake, committed during the policy period in the treatment of patients of the Insured at the premises or in the performance of autopsies at the premises."
 Underwriters at Lloyd's London:
 "... to pay or make good to the Assured to the extent hereinafter mentioned such damages as may be awarded against the Assured in respect of:"
 "Professional services rendered, or which should have been rendered by the Assured to any person while receiving treatment in the within mentioned Hospital or its out patient department or in an ambulance maintained by the Hospital (but the Underwriters shall not be liable for negligence in the operation or maintenance of the ambulance itself), provided such claim or claims for damages are solely based upon malpractice, error, negligence or mistake, breach of implied contract, loss of services, property damage, autopsies, inquests, personal restraint, the dispensing of drugs or medicine, assault, slander, libel, undue familiarity, anesthesia, hallucination, *203 malicious prosecution, replevin of property or arising from any counterclaims in suits brought by the Assured for the collection of fees--all the foregoing being hereinafter known as 'malpractice.' " These certificates also covered physicians, dentists, internes, etc.
 Summarizing the American Casualty and Fireman's Fund policies, they cover "malpractice, error or mistake." Summarizing the Lloyd's policies, they cover "malpractice, error, negligence or mistake" plus damages from breach of contract, assault, slander, libel, malicious prosecution.
 Plaintiffs contend that "malpractice, error or mistake" constitute an "oratorical triad" meaning "malpractice" as that term is commonly understood. In Sutherland v. Fidelity & Casualty Co. of New York, 103 Wash. 583 [175 P. 187], the court said: "The words 'malpractice,' 'error,' and 'mistake,' as used in this indemnity policy, do not mean necessarily the same thing. If they were so intended, it was an idle thing to insert more than the word 'malpractice.' A physician may err or make a mistake, without being guilty of malpractice. This policy covers malpractice. It covers error and it covers mistake in the practice of appellant's profession; and if liability flows from either, and he is required to pay damages on that account, we think it is plain that the policy here undertook to insure against such mistake or such error, as well as against malpractice." That case points out that "malpractice" has a somewhat narrow meaning, namely, the failure of the one charged with malpractice to exercise diligence, care and skill, such as ordinarily possessed by the members of his profession. Thus a physician may err or make a mistake without necessarily being guilty of malpractice. The same qualification would apply to a hospital. In Ford Hospital v. Fidelity & Casualty Co., 106 Neb. 311 [183 N.W. 656], a hospital nurse, while bathing a child "made a 'mistake' within the meaning of the insurance policy when she allowed the hand of the helpless child to come in contact with a hot appliance." (P. 658 [183 N.W.].) There the policy covered, as in our case, the hospital for liability " 'in consequence of any malpractice, error or mistake ...' " (P. 658 [183 N.W.].) The court in holding that the policy was applicable placed its emphasis on the nurse's "mistake" and did not even mention "malpractice." [1] In our case, the words "mistake, error" and also "negligence" in the policies necessarily mean more than "malpractice." [2] "... when reasonably possible, meaning must be given to every sentence, *204 clause and word of a contract of insurance so as to avoid rendering portions of it inoperative. 1 Couch on Insurance, sec. 180, p. 367." (United States Automobile Assn. v. Miles, 139 Tex. 138 [161 S.W.2d 1048, 1050].) [3] But the county's sovereign immunity from liability in the operation of its hospital applies to liability from not only "malpractice" but also from "mistake, error or negligence" unless these terms, or any of them, cover the type of liability expressly provided by section 53051, Government Code, namely, liability resulting from dangerous or defective condition of public property. This brings us to the crux of the case, namely, do the terms "mistake, error or negligence" as used in the policies, include defective and dangerous condition of hospital property? This question is partially answered by American Policyholders Ins. Co. v. Michota (1952), 156 Ohio St. 578 [103 N.E.2d 817]. There a chiropodist held an insurance policy in which the insurer agreed to defend him in any action brought to enforce the liability imposed by law for an injury " 'arising out of the insured's profession' " and to pay any sums he might be obligated to pay " 'because of injury resulting from professional services rendered or which should have been rendered.' " (P. 818 [103 N.E.2d].) The patient had gone to the doctor for treatment of a foot ailment. He instructed her to sit in a metal hydraulic chair designed for the occupancy of patients. Due to the failure of the doctor to "lock" the chair before directing the patient to sit in it, it suddenly rotated as she was attempting to get into it, throwing her to the floor and injuring her. In a declaratory relief action brought by the insurer to determine if it was liable to the doctor for the amount of a judgment obtained against him by the patient, the insurer contended that the policy was strictly limited to those injuries which might arise out of the actual rendition of professional services, and that injury due to the condition of the chair was not covered. Pointing out (p. 819 [103 N.E.2d]) "that, in conformity with the well established and universally recognized rule, any doubt or ambiguity with respect to the meaning of the phraseology employed in the policy must be resolved in favor of the insured and against the insurer, which prepared and issued the policy and collected a premium therefor," the court held that nowhere in the policy was the liability of the insurer limited to "malpractice" nor to the failure of the doctor to use that standard of professional skill in the treatment of patients prescribed by law. It further *205 held that the patient's injury was "due to the negligence of the doctor in failing to maintain apparatus employed by him in his practice of chiropody in a safe condition" (emphasis added) and that "Maintaining the treatment chair in a proper and safe condition for the accommodation of patients was a service or duty directly connected with the practice ... of his profession ..." (P. 819; emphasis added.) [4] Thus maintaining its hospital property in a nondangerous and nondefective condition was a service or duty of the Santa Clara Hospital directly connected with its operation and its treatment of and service to its patients. (See Madison v. City & County of San Francisco, supra, 106 Cal.App.2d 232, 252.) Therefore, its failure to do so would be due either to mistake, error or negligence, and hence included in those terms in the policy. [5] While, because of sovereign immunity, a patient would not have a cause of action based on mistake, error or negligence, he would have one based on dangerous or defective condition of hospital property, even though that condition was caused by mistake, error or negligence, or occurred while malpractice in the narrow sense of the word was being practiced.
 [6] It should be pointed out that in addition to covering the county the policies (except the American Casualty policy, whose premium was substantially less than the premiums on the other policies) covered employees of the county, including physicians and nurses. These persons do not have sovereign immunity. (See Davie v. Regents of University of Cal., 66 Cal.App. 689 [227 P. 247].) It is conceded that the board of supervisors has the authority to purchase with public funds insurance covering the individual liability of county employees. (See Gov. Code, 1956.)
 Was Summary Judgment Proper?
 This brings us to the question of whether in view of the fact that the policy could be construed to include the type of malpractice for which the county could not legally be held liable, summary judgment was proper. This question involves two elements: (1) the complaint, and (2) the contractual power of the board of supervisors. [7] (1) The first cause of action in the complaint was drawn upon the theory that none of the policies covered risks for which the county might legally be liable, and that therefore, the payment of the premiums therefor was an illegal expenditure of county funds. This theory being found incorrect, the court properly granted *206 judgment in favor of defendants on the pleadings on the only issue presented. There was no issue as to whether the premiums charged were greater than warranted for the risks and protection actually covered, or whether the premiums were or were not divisible. [8] (2) There can be no question but that a board of supervisors has the authority and power to purchase insurance to cover all risks for which the county and its employees might be liable, and, moreover, to purchase protection against the expense of litigation upon claims against the county whether proper or improper. Here the defendants in addition to covering the county and its employees against proper liabilities contracted to defend the county against all actions within the stated sphere of risk, and did not limit their responsibility in that behalf to well grounded claims against the county. [9] The fact that included within the coverage was some liability which did not exist, would not affect the validity of the policies as a whole. [10] In the absence of fraud or collusion, the premiums which the county should pay for proper coverage is a matter within the power of the board of supervisors to determine. [11] "Assuming that the municipal authorities have acted within the orbit of their lawful authority, no principle of law is better established than that courts will not sit in review of proceedings of municipal officers and departments involving legislative discretion, in the absence of bad faith, fraud, arbitrary action or abuse of power." (McQuillin, Municipal Corporations, 10.33. To the same effect, In re City & County of San Francisco, 191 Cal. 172, 184 [215 P. 549]; Wehrle v. Board of Water & Power Commrs., 211 Cal. 70, 73 [293 P. 67]; Butler v. Compton Junior College Dist., 77 Cal.App.2d 719 [176 P.2d 417].) For this reason also, the judgment was proper.
 The complaint contained a second count which requested the court to determine if the American Casualty Company and Fireman's Fund Indemnity policies covered staff physicians and other employees of the hospital, and then determine what part, if any, of the premiums of all policies is attributable to the coverage of these individual employees. Obviously, for the reasons above mentioned as to the first count, the judgment denying relief under this count was proper.
 Statute of Limitations
 Defendants raise the bar of the statute of limitations. Although the complaint states the dates of coverage of the various policies, it does not state the dates of the payments *207 of the premiums. If these dates correspond with the dates of the beginning of the coverage periods, it would appear that recovery on one or more, although not all, of the premiums would be barred. In view of our determination it becomes unnecessary to consider this question further.
 The judgment is affirmed.
 Peters, P. J., and Wood (Fred B.), J., concurred.