[L. A. No. 25113. In Bank. Jan. 13, 1959.]

THE CITY OF LOS ANGELES et al., Petitioners, v. THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES, Respondent; LOS ANGELES DODGERS, INC. (a Corporation) et al., Real Parties in Interest.

428

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Weldon L. Weber, Deputy City Attorney for Petitioners.

Harold W. Kennedy, County Counsel, and William E. Lamoreaux, Assistant County Counsel, for Respondent.

Joe Crider, Jr., O'Melveny & Myers and Pierce Works for Real Party in Interest Los Angeles Dodgers, Inc.

Julius Ruben, in pro. per., and Phill Silver for Real Parties in Interest Ruben and Kirshbaum.

GIBSON, C. J.—By this proceeding in prohibition the city of Los Angeles seeks to restrain the superior court from enforcing a preliminary injunction or taking further action in a taxpayer's suit to enjoin certification of the result of a referendum election.

The city council adopted an ordinance authorizing execution of a contract between the city and the Brooklyn National

League Baseball Club, Inc., which provided, among other things, for the exchange of certain properties and for the ball club to erect a stadium and procure the transfer from Brooklyn to Los Angeles of the franchise of the major league baseball club known as the "Dodgers." Following the filing of a referendary petition, the city council voted to place the ordinance on the ballot for approval or disapproval by the voters, and at the ensuing election a majority of the voters favored adoption of the ordinance. Thereafter respondent superior court granted a temporary restraining order and a preliminary injunction restraining the city council from declaring the result of the election.

Two prior actions were filed by some of the real parties in interest. One was brought to secure a declaration that the ordinance and contract were invalid and to enjoin any proceedings thereunder (*Ruben* v. *City of Los Angeles, L. A. Superior Court No. 687210*); in the other similar relief was sought together with mandamus and prohibition (*Kirshbaum* v. *Housing Authority, L. A. Superior Court No. 699077*). Judgments were rendered enjoining the execution of the contract, and appeals therefrom are now pending in this court. In a third action filed by Kirshbaum against the city, a preliminary injunction was issued enjoining certification of the result of the referendum election. (*Kirshbaum* v. *City of Los Angeles, L. A. Superior Court No. 703023.*) This proceeding was then brought by the city to prohibit the superior court from enforcing the preliminary injunction or from taking further steps in the third action.

 The writ of prohibition is an appropriate remedy to arrest the proceedings of a court when there is not a plain, speedy, and adequate remedy in the ordinary course of the law and when the proceedings of the court are without or in excess of its jurisdiction. (Code Civ. Proc., §§ 1102, 1103.) The absence of another adequate remedy was determined by this court when we granted an alternative writ. (*Cf. Atkinson* v. *Superior Court*, 49 Cal.2d 338, 342 [316 P.2d 960]; *Bowles* v. *Superior Court*, 44 Cal.2d 574, 582 [283 P.2d 704].) To permit the issuance of prohibition it is not necessary that there be a lack of jurisdiction over the subject matter or parties in the fundamental sense but only that there be a want or excess of the power of the court as defined by statute or by rules developed and followed under the doctrine of *stare decisis*. (*Tide Water Assoc. Oil Co.* v. *Superior Court*, 43 Cal.2d 815, 821 [279 P.2d 35]; *Abelleira* v. *District Court of*

*Appeal*, 17 Cal.2d 280, 287 et seq. [109 P.2d 942, 132 A.L.R. 715].)

■ Subdivision 7 of section 3423 of the Civil Code and the second subdivision 7 of section 526 of the Code of Civil Procedure provide that an injunction cannot be granted to "prevent a legislative act by a municipal corporation." Subdivision 4 of section 3423 of the Civil Code and the second subdivision 4 of section 526 of the Code of Civil Procedure similarly provide that an injunction cannot be granted to "prevent the execution of a public statute by officers of the law for the public benefit." The basis for these statutory provisions is to be found in the doctrine of separation of powers of government into three independent departments. (See *Reclamation Dist. No. 1500* v. *Superior Court*, 171 Cal. 672, 682 [154 P. 845] ; *Glide* v. *Superior Court*, 147 Cal. 21, 24 et seq. [81 P. 225].)

■ A court acts in excess of its jurisdiction if it attempts to enjoin the enactment or enforcement of a valid public statute or ordinance. (*Financial Indem. Co.* v. *Superior Court*, 45 Cal.2d 395, 402 [289 P.2d 233] ; *Santa Clara County* v. *Superior Court*, 33 Cal.2d 552, 557-559 [203 P.2d 1] ; *Reclamation Dist. No. 1500* v. *Superior Court, supra*, 171 Cal. 672, 676, 681-682; *Wheeler* v. *Herbert*, 152 Cal. 224, 241 [92 P. 353] ; *Glide* v. *Superior Court*, 147 Cal. 21, 23 et seq. [81 P. 225] ; *Loftis* v. *Superior Court*, 25 Cal.App.2d 346, 352 et seq. [77 P.2d 491] ; *State Board of Equalization* v. *Superior Court*, 5 Cal.App.2d 374, 378 [42 P.2d 1076] ; *cf. Moore* v. *Superior Court*, 6 Cal.2d 421, 424 [57 P.2d 1314].) ■ Although prohibition should not issue where the propriety of the trial court's action depends upon questions of fact (*Brock* v. *Superior Court*, 11 Cal.2d 682, 687 et seq. [81 P.2d 931] ; *Agricultural Prorate Com.* v. *Superior Court*, 5 Cal.2d 550, 586-587 [55 P.2d 495]), none of the persons attacking the contract has pointed to any evidence which would present a substantial question of fact upon a material issue. It follows that prohibition will lie to test the validity of the ordinance.

The contract, as set forth in Ordinance Number 110,204, provides that the city will convey to the ball club 185 acres, more or less, of land presently owned by it in Chavez Ravine and will use its best efforts to acquire at a reasonable cost and convey additional land to make a total of about 300 acres, reserving, among other things, an oil drilling site not to exceed five acres, the location of the site to be mutually agreed upon by the parties. Title to 40 acres of the 300, to be designated by the

ball club, is to be retained by the city for 20 years to assure performance by the ball club of its obligations to provide and maintain certain recreational facilities during that period, after which title is to be conveyed to the club.

The city is to employ its best efforts to have eliminated or modified a deed provision restricting the use of certain property acquired by the city from the Los Angeles Housing Authority, provided that if the city is unable to have the restriction altered to permit the use contemplated by the ball club, the contract shall be of no further effect. Upon conveyance of the property to the club, existing public streets therein no longer needed for street purposes will be vacated, and the city, upon demand of the ball club, is to commence proceedings to vacate such streets and deliver title to the club. Prior to passage of title to any of the 300 acres, the city is to spend up to but not to exceed $2,000,000, in the manner to be designated by the ball club, to place such property in a proper condition to convey to the ball club. The city also is to perform certain acts with respect to construction of additional streets, rezoning the property, and obtaining funds from the county for access roads.

The ball club agrees to construct on the Chavez Ravine property, at its expense, a modern baseball stadium seating at least 50,000 people. It will move to Los Angeles "the present Brooklyn National League franchise and ball team known as the 'Dodgers.'" Further, the club will convey to the city the land and improvements known as Wrigley Field, reserving the right to use of the field until the stadium is completed, conditioned upon payment of a rental to be mutually agreed upon.

Recreational facilities costing not over $500,000 are to be constructed by the ball club on the 40-acre portion of the Chavez Ravine property referred to above, such facilities to be mutually agreed upon prior to conveyance of the property. The club is to maintain the recreational facilities on the 40-acre parcel at an annual cost of $60,000, and in the event the maintenance does not amount to that much in any year, the club is to pay the city the difference between $60,000 and the actual cost. The ball club is under no obligation to furnish personnel for the operation of the recreational facilities, and, with certain exceptions, the city is to have control of them.

In addition, the agreement contains a number of recitals of fact and declarations of policy to the general effect that the contract will be beneficial to the city and that the property

which the city now owns and is to convey to the ball club is no longer required for the use of the city.

The city reserves all mineral rights in the Chavez Ravine property, and it is to acquire all mineral rights in Wrigley Field. The agreement directs that one-half of the receipts from the mineral rights is to be placed by the city in a special trust fund and expended solely for the purpose of providing and maintaining recreational facilities to promote the youth program of the ball club, the location and type of facilities to be mutually agreed upon by the parties. ▮ The ball club has given formal notice to the city that the club has waived and relinquished all rights conferred upon it under these provisions and has assigned to the city all such rights. The provisions being solely for the benefit of the club, it could properly waive them, and there is no longer any reason to treat them as parts of the contract.

▮ The benefits to be received by the city are apparent, and the adequacy of the consideration, which involves the comparative values of the promises of the parties, is a matter which, in the absence of abuse of discretion, rests in the judgment and discretion of the city council. (*Cf. Wehrle* v. *Board of W. & P. Commrs.*, 211 Cal. 70, 72-73 [293 P. 67] ; *Nickerson* v. *County of San Bernardino*, 179 Cal. 518, 521 et seq. [177 P. 465] ; *Burns* v. *American Casualty Co.*, 127 Cal.App.2d 198, 206 [273 P.2d 605].)

▮ There is no merit to the argument that the contract lacks mutuality in that there is no absolute obligation requiring the ball club to purchase the 40 acres to be used for recreational purposes or binding it to pay any amount therefor. The contract expressly declares that at the end of the 20-year period during which the ball club is to operate the recreational facilities, title to the 40 acres shall be conveyed to the club "without further consideration" if all the terms of the agreement pertaining to the facilities have been fully performed. The consideration for this conveyance obviously is to be found in the various obligations which must be performed by the ball club whether or not it accepts the 40 acres. The contract likewise is not defective because it provides that a violation of the agreement by the ball club regarding its obligations concerning the recreational facilities will not affect any transfers of land theretofore made. The city is amply protected, in the event of such a default, by the fact that it may continue to retain title to the 40 acres and, in addition, may maintain an action for damages for breach of contract.

The contract is claimed to be void because it contains promises to agree in the future. The general rule is that if an "essential element" of a promise is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement is made. (*Ablett* v. *Clauson*, 43 Cal.2d 280, 284-285 [272 P.2d 753].) The enforceability of a contract containing a promise to agree depends upon the relative importance and the severability of the matter left to the future; it is a question of degree and may be settled by determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement. (See 1 Williston on Contracts (3d ed. 1957) §§ 45, 48, pp. 152, 156-158. See also *Belcher* v. *Williams*, 151 Cal.App.2d 615, 620 [311 P.2d 861].) Where the matters left for future agreement are unessential, each party will be forced to accept a reasonable determination of the unsettled point or if possible the unsettled point may be left unperformed and the remainder of the contract be enforced. (*Wilson* v. *Wilson*, 96 Cal.App.2d 589, 593-595 [216 P.2d 104]; see 1 Williston on Contracts (3d ed. 1957) § 48, pp. 156-158.)

The contract leaves to the future agreement of the parties the location and size, within 5 acres, of the site to be used for oil drilling, the nature of the recreational facilities to be constructed and maintained for 20 years on the 40-acre parcel, and the rental to be paid to the city in the event the ball club exercises its right to use Wrigley Field prior to completion of the stadium. The reservation of an oil drilling site and the establishment and maintenance of the recreational facilities on the 40-acre parcel are, of course, important features of the contract, but, in our opinion, the uncertainty with respect to the exact location and size of the drilling site and the details with respect to the recreational facilities are matters which should not be treated as rendering the contract void. There is no indication that the city and the ball club are unable to come to an agreement as to them, and, if the parties cannot do so, the court may determine the matters within the test of reasonableness referred to above, in accordance with the general purposes of the contract. Similarly, the court could fix a reasonable rental for Wrigley Field, if this should ever become necessary.

 In considering whether the contract made by the city has a proper public purpose, we must view the contract as a

whole, and the fact that some of the provisions may be of benefit only to the baseball club is immaterial, provided the city receives benefits which serve legitimate public purposes. (*Cf. City of Oakland* v. *Williams*, 206 Cal. 315, 319 et seq. [274 P. 328]; *County of Los Angeles* v. *La Fuente*, 20 Cal.2d 870, 876-877 [129 P.2d 378].) The transfer of Wrigley Field from the ball club to the city and the construction by the club on the 40-acre parcel of recreational facilities to be used by the city for 20 years, together with maintenance of the facilities for that period, are obviously for proper public purposes. In view of these direct benefits, it is unnecessary for us to consider whether the city could properly expend public funds for the various indirect benefits which the public will receive under the contract, such as the bringing to the city of a major league baseball club, the construction by the club of its new stadium, and the return of the Chavez Ravine property to the tax rolls.

 When the contract is viewed as a whole, there is no actual inconsistency, as argued, between the declaration, on the one hand, that the 185 acres of Chavez Ravine property now owned by the city are no longer required for the use of the city and the recital, on the other hand, that 40 acres of the total of 300 to be conveyed to the club are to be used by the city for needed recreational facilities. The provisions, when read together, may properly be interpreted as meaning that the city has no need for the Chavez Ravine property with the exception of the use of the 40-acre parcel over a 20-year period for the recreational facilities referred to in the contract. As we have seen, the city retains control of and title to that 40-acre parcel for the purpose of obtaining the needed facilities.

 It is difficult to see anything improper in an agreement by which a city, owning more land than it needs, conveys some of that land in exchange for the construction and maintenance of needed facilities for use by the city over a 20-year period. It is immaterial that the facilities are to be located on the land which the city thus sells; in fact, under the circumstances involved here, it is of advantage to the city that the facilities are to be so located because this enables the city to retain title for the 20-year period as a means of securing the performance of the promises of the ball club regarding the construction and maintenance of the facilities.

 Kirshbaum, in action Number 699077, offered to prove by the testimony of a council member that no steps were taken by the council acting as a body to determine whether the land

was no longer required for the use of the city. The offer was rejected by the trial court upon the ground that the minutes of the council are the best evidence until there is a dispute as to their correctness, and our attention has not been called to any portion of the minutes which would support Kirshbaum's assertion or to any evidence that the minutes are incorrect. Moreover, the offered evidence, if admitted, would be insufficient to overcome the declaration in the ordinance that the land to be conveyed by the city was no longer required by the city, since the offer does not show any fraud or abuse of discretion by the council. Likewise insufficient to overcome the declaration are Kirshbaum's offers to prove by the testimony of the general manager of the city's department of recreation and parks that this department was actively seeking and acquiring land to be used for playground and recreational purposes and that the Chavez Ravine property is suitable for such purposes.

In our opinion the city can properly agree that, in return for legitimate benefits which it will receive under the contract, it will use its best efforts to acquire additional land to convey as part of the consideration to be furnished by it, even though the city is in effect agreeing to purchase land for the purpose of selling it immediately thereafter to a private corporation. If the city had so desired, it clearly could have added to the contract price, in cash, the reasonable value of the additional land which it agreed to use its best efforts to acquire, and there is no essential difference if the city, instead of paying the amount in cash, uses the money to acquire property and then conveys the property as part of the contract consideration. Section 2(11)(1) of the city charter authorizes the city to buy "anything useful or convenient" in connection with the exercise of the city's powers. While a city may not purchase land when no public use or purpose is involved, in the present case the additional land is to be acquired for a proper public purpose, namely, that of furnishing the type of contract consideration which enables the city to enter into a bargain which it deems advantageous. The contract does not require the city to use eminent domain to acquire the additional land, and we need not determine whether that method could be employed for such a purpose. This case does not present the situation of a municipal government which seeks to purchase property for the purpose of making a gift of it to a private enterprise or of otherwise improperly using city funds to aid private persons, because the

property which the city is to endeavor to buy, if acquired, will not be given away to anyone but will be used as part of the consideration of a contract entered into for a legitimate public purpose.

It is contended that the city does not have power to sell to a private corporation land held by the city subject to a public purpose restriction imposed by the grantor's deed to the city and that the city has no power to enter into an agreement with a private corporation obligating the city to extinguish such a restriction. This contention relates to land acquired from the Housing Authority of the City of Los Angeles by a deed containing a restriction reading, in part, "to be used for public purpose only; and not to be used directly or indirectly by the City of Los Angeles, or its grantees, successors in interest, assigns, or any other person or persons whatsoever claiming by, through or under the City of Los Angeles, for a period of 20 years from and after the date hereof, for residential development or residential subdivision." The city, as we have seen, agrees to use its best efforts to have the restriction eliminated or modified to permit the use contemplated by the club, and it is provided that if the city is unable to have the restriction changed, the contract shall be of no further effect.

The grantor did not intend by this provision to prohibit the city from selling the property; the provision contains no such limitation and plainly contemplates the possibility of a sale in that the restriction is made applicable to use of the property by the "grantees" and "assigns" of the city. Under section 393 of the charter, when the city no longer requires the use of property, it may, with certain exceptions not pertinent here, sell the property upon such terms and conditions as the council prescribes by ordinance. In view of the declaration by the council that the city no longer requires the use of the property, the city's promise to use its best efforts to have the deed restriction removed cannot be said to constitute an illegal agreement binding the city council to exercise its judgment in the future. Any possibility that the Housing Authority may have a right to complain of a termination of the public use upon a sale by the city will disappear if the city is able to obtain the Housing Authority's consent to eliminate the restriction. Similarly, such a consent will obviate any difficulty with respect to the restriction against residential use of the property. Whether or not the Housing Authority has power to execute, and is willing to execute, a release of its rights under the deed restriction is a question which relates to

the performance rather than to the validity of the contract and is not before us in this proceeding.

We find no merit to the claim that the city has attempted to make an illegal delegation to a private corporation of the duties of the city council by agreeing that, prior to passage of title, the city shall spend $2,000,000 to place the Chavez Ravine property "in a proper condition to convey to" the ball club, the manner in which the money will be spent for such purpose to be designated by the club. It seems obvious that the city could not be required by the ball club, under this provision, to make any expenditures not in accord with the general purposes of the contract. The city could have paid the money to the club outright, as part of the contract consideration, without retaining any control over the manner or purpose for which the money should be spent, and the arrangement by which the city will keep possession of the money until it is spent and, in addition, retain some control of how it is spent, is an advantage to the city which does not militate against the validity of the contract.

It is contended that the city is illegally agreeing to vacate streets under the provision that the existing public streets in the Chavez Ravine property which will no longer be needed for present or future street purposes will be vacated and the city will, upon demand of the ball club, commence proceedings to vacate the streets. It is an elementary rule that contracts must be construed, whenever possible, so as to make them valid rather than invalid, and the provision, when read as a whole, may be construed as not imposing on the city any improper obligation. The clear implication is that the agreement will apply only to such streets as the city may subsequently determine to be no longer needed for street purposes. The agreement does not purport to control or govern the exercise of the power to determine what streets may no longer be necessary but to provide that, when the determination is made, the city will commence the required statutory procedure.

It is to the advantage of a city and the public to vacate a street which is no longer needed and thereby relieve the city of the expense and responsibility of maintaining it in proper and safe condition. By this part of the contract the city is merely agreeing to do an act which it should do regardless of contract once it determines that there is no longer a need for a particular street. Cases which declare that agreements to vacate or sell a street are invalid as being attempts

to evade the statutory modes of procedure and safeguards or to bind local officials in advance as to the exercise of their judgment in the future, are clearly distinguishable. (See *County of San Diego* v. *California Water etc. Co.,* 30 Cal.2d 817, 824 [186 P.2d 124, 175 A.L.R. 747]; *People* v. *City of Los Angeles,* 62 Cal.App. 781 [218 P. 63].)

 Ruben asserts, in opposition to the conclusion we have reached with respect to vacation of streets, that we must also consider the paragraph which provides that the city shall spend up to $2,000,000 to place the property in a proper condition to convey to the ball club and that the manner in which the money is to be spent is to be designated by the club. He urges that this paragraph, when read together with the provision relating to the vacation of streets, has the effect of delegating to the club the power to designate which streets are to be eliminated. The contract, however, does not purport to authorize either the city or the ball club to use any of the $2,000,000 to remove a street where such removal has not been duly authorized in appropriate vacation proceedings. If it should be determined in such a proceeding that a particular street remained necessary for public use as a street, the stadium obviously could not be built at that location, but this possibility does not go to the validity of the contract. At most it might render performance impossible, a matter which is not now before us.

Let the writ issue as prayed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

The petitions of Real Parties in Interest Louis Kirshbaum and Julius Ruben for a rehearing were denied February 11, 1959.