[Civ. No. 24834. Second Dist., Div. One. Mar. 15, 1961.]

FRANK SMITH et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

Arthur E. Briggs for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Milton N. Sherman, Deputy City Attorney, Joe Crider, Jr., O'Melveny & Myers, Pierce Works and Rodney K. Potter for Respondents.

WOOD, P. J.—Plaintiffs, as taxpayers and citizens of the city of Los Angeles, sought by their complaint: (1) to enjoin the city from transferring 27.67 acres of Elysian Park to defendant Los Angeles Dodgers, Inc., and (2) to obtain a declaration that Resolution Number 2250 of the board of recreation and park commissioners of Los Angeles and that Ordinance Number 113933 of Los Angeles (relative to said land) are invalid. Defendants' motion for a summary judgment was granted. Plaintiffs appeal from the judgment.

The complaint alleged, as a first cause of action, that on October 7, 1957, the City Council of Los Angeles passed Ordinance Number 110204 (attached to complaint) approving and authorizing the execution of a contract between the city of Los Angeles and the defendant Los Angeles Dodgers, Inc., a baseball club; by the terms of the contract the city agreed to convey to the baseball club approximately 300 acres of land, including 27.67 acres of Elysian Park particularly described in Resolution Number 2250 of the board of park commissioners adopted on September 26, 1957; said park had been forever dedicated as a public park; it is provided in section 170 of article XVI of the Charter of Los Angeles that the board of park commissioners shall have control of all parks and no part of a park shall be devoted to any other purpose without per-

mission of the park board, and such park land may be excepted from the charter provisions only where a portion of park land has been removed from the jurisdiction of the park board by reason of the use of the land for public purposes incompatible with park use, and such exception may be made only if (1) the park board and city council determine that such remaining land is unsuitable for further use as a public park, and (2) land of equal area to the unsuitable park land is acquired in the same portion of the city and is dedicated as a public park; in violation of said charter and by abuse of discretion and in bad faith, the park board by their Resolution Number 2250 and the city council by its Ordinance Number 113933, passed June 26, 1959, did, contrary to fact, declare that use of a part of Elysian Park for freeway and highway purposes caused 27.67 acres (Parcel A) of the park to be unsuitable for further use as a public park, and that other land (Parcel B as described in the resolution) is land of equal area to the land in Parcel A (27.67 acres); that Parcel A is the 27.67 acres described in the contract between the city and the baseball club; contrary to the declaration in Resolution 2250 and Ordinance 113933, the use of a portion of Elysian Park for a state highway was compatible with park uses in that the park board did on November 14, 1940, authorize the opening of the highway through Elysian Park and declared in a resolution that the authorization was to improve the usefulness of the remaining 27.67 acres; thereafter, on April 1, 1943, the city council passed an ordinance authorizing the opening of a public street through said park; the dedication of Parcel B, described in Resolution 2250 and Ordinance 113933, does not comply with said charter requirement (regarding obtaining other land of equal area in the same portion of the city for park purposes), in that Parcel B is not in the same portion of the city as Parcel A (the 27.67 acres) and Parcel B is not of equal area to Parcel A and was not acquired for park purposes but was unused land previously owned by the city; Parcel A (27.67 acres) has a distinct and unique character as park land in that in 1932 it was dedicated as a Washington Memorial Grove, and further said parcel is the only high point of land that has a full view of the city center and the part of the city south of the Santa Monica Mountains; there is no other similar and available site for a park in the same portion of the city; the defendants, conspiring with each other, intend to and will, unless restrained by the court, cause said 27.67 acres to be transferred and conveyed to other than

park purposes and to be transferred and conveyed to said baseball club as expressed in Resolution 2250 and Ordinance 113933, and in violation of said charter and without authority and in bad faith and abuse of discretion.

As a second cause of action, the complaint alleged that an actual controversy exists "between the parties" to this action concerning the right of the defendants to divert the 27.67 acres of Elysian Park from park purposes and to transfer and convey that land to the baseball club in that the plaintiffs contend: that the defendants are without authority to so transfer or convey said land; that Resolution 2250 and Ordinance 113933 are invalid and forbidden by the charter of the city and the Constitution of the state; that the removal of a portion of the park for a highway did not render the remaining 27.67 acres of park land incompatible with park use; the land in Parcel B is not land of equal area to Parcel A and is not in the same portion of the city as Parcel A; the park board and city council have not made a valid determination with respect to Parcel B, but in bad faith and abuse of discretion have falsely determined as to the facts required by section 170, subdivision (d) of the charter; that the defendants dispute and contest the contentions of plaintiffs.

The prayer of the complaint is that the defendants be restrained and enjoined from executing any contract to transfer or convey said 27.67 acres from park purposes; that the court declare whether the contract set forth in Ordinance 110204 would be a valid contract for the conveyance of said 27.67 acres; that the court declare whether the determination of the park board in Resolution 2250 and the determination of the city council in Ordinance 113933 are sufficient to comply with the requirements of the charter.

The defendants city, councilmen, mayor, and members of the park board made a motion for summary judgment under the provision of section 437c of the Code of Civil Procedure. The motion was based upon the defense of res judicata—that three prior cases involving the validity of the contract were conclusive determinations against the claims made by plaintiffs herein. The affidavit of Mr. Weldon L. Weber, Deputy City Attorney, in support of that motion, stated in substance as follows: On September 23, 1957, action No. 687210, entitled *Ruben, et al.* v. *City of Los Angeles, et al.,* was filed in the Superior Court of Los Angeles County; those plaintiffs alleged in their amended complaint that they were citizens and taxpayers of Los Angeles, and they made the allegations on behalf

of themselves and all other citizens and taxpayers of Los Angeles; they also alleged that on September 30, 1957, the City Council of Los Angeles passed Ordinance 110204 which is attached to the complaint, and which ordinance and "contract therein" have been accepted by said baseball club; they also alleged that approximately 300 acres in the Chavez Ravine area "contemplated to be conveyed under said ordinance" included approximately 27.67 acres of Elysian Park, and that the conveyance to the baseball club is not for a public use and is void; the prayer of the amended complaint was that the court declare to be invalid the said ordinance, contract, and all conveyances of land made thereunder; thereafter, in an amendment to the amended complaint, plaintiffs alleged in part that an ordinance referred to was Ordinance 110204, and that the city is trying to purchase approximately 27.67 acres of land in Elysian Park which land is managed by the park board pursuant to article XVI of the charter, and that the purpose of making the purchase is to convey the land pursuant to said ordinance for the sole benefit of the baseball club. The affidavit also recited that the pretrial statement, entered into by the parties, stated as follows: that Ordinance 110204 was passed by the city council and approved by the mayor on October 8, 1957, and the operation of the ordinance was delayed until a referendary vote thereon was had on June 3, 1958, wherein the vote was in favor of the ordinance; that the approximately 300 acres to be conveyed under the ordinance included 27.67 acres of Elysian Park property. The affidavit also recited that the points and authorities filed by plaintiff Ruben, at the trial, stated that section 170, subdivision (3), of the charter provided that all lands set apart as a public park shall forever remain for public use; and plaintiffs do not find that the sale of park property under the ordinance is permitted by any exception to said section 170. The affidavit also stated that at the trial of said action the defendants introduced in evidence a copy of the council minutes wherein it was said that Resolution 2250, adopted by the park board, refers to a finding of the board concerning approximately 27 acres in Elysian Park within the area to be developed for baseball. It was stated further in the affidavit that the trial court entered judgment in favor of the plaintiffs, and in the memorandum decision of the trial court it was said that plaintiff contends that the city cannot sell park property to a private corporation; that the park property involved in this transaction is a part of Elysian Park and there is no evidence in

this case with respect to the manner of dedication of that park for park purposes, and for lack of evidence respecting the dedication the court cannot pass on that question and deems it unnecessary to the decision; that upon appeal therein, in the opening brief of appellants which was filed jointly in said cause and in *Kirshbaum* v. *Housing Authority,* it was said that ''Curiosity may be aroused about the 27-acre parcel presently a part of Elysian Park which is to be conveyed by the City''; that section 170, subsection (b) of the charter provides that all public park lands shall forever remain for public use, however, subsection (d) provides that where a portion of park land has been removed from the jurisdiction of the park board by reason of the use of the land for public purposes incompatible with park use, the remaining land within such park shall not be subject to subsection (b) if the park board and council find and determine that such remaining land is unsuitable for further use as a public park, and if land of equal area to the unsuitable park land is acquired in the same portion of the city and is dedicated as a public park; that proceedings for such finding and determination are now pending before the city council, as evidenced by the excerpt from the council minutes read into evidence by the deputy city clerk who was called as a witness by Kirshbaum; the trial court correctly declined to consider the matter of the parcel being park property, as stated in its memorandum of decision in the Ruben case and mention of the matter is made for the purpose of completing a full presentation of the proposed agreement. The affidavit also stated that the Supreme Court in the Ruben case and the Kirshbaum case reported in 51 Cal.2d 857, in reversing the judgments therein, made certain statements at page 863 (the statements as referred to are quoted in the affidavit and it is not necessary to repeat them here—reference thereto will be made later).

The defendant Los Angeles Dodgers, Inc., also made a motion for summary judgment upon the basis of res judicata. The notice of motion referred specifically to the three prior cases of *Ruben* v. *City of Los Angeles*; *Kirshbaum* v. *Housing Authority of the City of Los Angeles* (51 Cal.2d 857 [337 P.2d 825]), and *City of Los Angeles* v. *Superior Court* (51 Cal.2d 423 [333 P.2d 745]). The affidavit of Mr. Pierce Works, in support of the motion, stated that he was one of the attorneys for the Los Angeles Dodgers, Inc., in those prior cases. His affidavit included statements regarding the Ruben case which were substantially the same as the statements in the affidavit

of Mr. Weldon L. Weber regarding that case. His affidavit also stated that in the Ruben case, *supra*, the plaintiffs had judgment enjoining the execution or performance of the contract; that the defendants in the Ruben case appealed and the validity of the contract was upheld by the Supreme Court, and the judgment was reversed with the direction to enter judgment for defendants; that such judgment was entered on May 28, 1959; that the contract between the Los Angeles Dodgers, Inc., and the city was executed on June 3, 1959, and is now in process of performance.

Mr. Works' affidavit also stated that the Kirshbaum case was commenced on April 10, 1958, by the filing of a petition for a writ of mandate or prohibition and for declaratory relief; however, it was treated as an action for injunction, and after a trial, conjointly with the Ruben case, judgment was entered in the Kirshbaum case (as in the Ruben case) enjoining the execution or performance of the contract; that on appeal in that case the judgment was reversed by the Supreme Court, and the contract was upheld; that Kirshbaum's appeal to the United States Supreme Court was dismissed on October 15, 1959; the Kirshbaum case related, at the outset, to the phase of the contract dealing with the proposed removal of a so-called "public purpose" restriction earlier imposed by the Housing Authority upon a portion of the property to be conveyed to the Dodgers; at the trial, however, Kirshbaum elicited testimony from a deputy city clerk with reference to Resolution 2250 of the park board, which resolution pertained to approximately 27 acres in Elysian Park within the area proposed to be developed for baseball; on appeal in the Kirshbaum case the said Resolution 2250, pursuant to stipulation, was placed before the Supreme Court of the state; Kirshbaum also contended on appeal that the 27-acre parcel could not be sold by the city because the consent of the park board had not been obtained as contemplated by section 393 of the charter; the Supreme Court held that such requirement, assuming it to be necessary, was one which could be complied with at any time prior to actual sale of the property.

Mr. Works' affidavit also states that while said two cases (Ruben and Kirshbaum cases) were pending in the trial court, Kirshbaum filed a second action seeking to enjoin the city council from certifying the result of the referendum election which upheld the contract; the injunction was sought upon the ground that the contract was invalid; a preliminary injunction was granted by the superior court, and then the city

obtained from the Supreme Court a writ of prohibition permanently staying enforcement of the injunction and the further prosecution of the second Kirshbaum action; the opinion of the Supreme Court in the prohibition proceeding, *City of Los Angeles* v. *Superior Court, supra,* 51 Cal.2d 423 [333 P.2d 745], upheld the contract; the petition for the writ of prohibition set forth a map which is identical with the map that is attached to the complaint herein delineating the 27.67-acre parcel; in the prohibition proceeding, Ruben and Kirshbaum and Los Angeles Dodgers, Inc., appeared as the real parties in interest; also, by stipulation and order, the record and briefs in the Ruben and Kirshbaum cases were deemed to be before the Supreme Court for all purposes; Kirshbaum's petition to have the decision of the California Supreme Court reviewed by the United States Supreme Court was dismissed by the latter court on October 19, 1959.

The plaintiffs filed two affidavits in opposition to the motion for summary judgment. One of those affidavits, by Councilman John C. Holland, stated in substance that upon information and belief he asserts that the allegations of the complaint are true; that on many occasions he has been upon the site of the 27.67 acres referred to as Parcel A, described in the complaint and in Resolution 2250 and Ordinance 113933; the state highway described in said ordinance, and the streets opened in connection with the highway, made said park land more accessible and usable than it had been before the construction of the highway; the park board gave permission for construction of the highway upon said park lands in order to make the remaining portion more accessible and usable for park purposes; that from the top of said parcel of land there is an unobstructed view of the older portions of the city and south of the Santa Monica Mountains, and no other site in the city available for a park site has a comparable view; that as councilman he has investigated the site known as Parcel B, described in said resolution and ordinance; that parcel is in a less frequented part of the city and is about 5 miles from Parcel A, and it has a comparatively short range of view; Parcel B has been owned by the city for several years and has remained unused and unimproved; it is adjacent to the site of a water tank; access to that parcel is by narrow streets; that parcel is not of an area equal in location and value to Parcel A and is not as suitable for park purposes as Parcel A.

The affidavit of Mr. Frank Shearer, in opposition to the motion, stated in substance that he had been park superin-

tendent of the city of Los Angeles 26 years, and had been a member of the park board two years; as such superintendent he became familiar with the portion of Elysian Park involved here (Parcel A) and he is familiar with Parcel B, referred to as Rose Hill; the construction of the highway and the connecting streets greatly improved the accessibility and utility of the park land for park purposes; the remaining land, after construction of the highway, is more suitable for park purposes; the 27.67 acres of remaining land, which is a hill above the highway, has unique park value because it has an unobstructed view of the older portions of the city and south of the Santa Monica Mountains, and no other site is available for park purposes which is comparably near and in view of said portions of the city; Parcel B, which is about 5 miles from Parcel A, was acquired some years ago for a housing project; the project was abandoned and the parcel has remained an unused and barren hill; the hill has a short range of view and is of a value much less than the value of Parcel A; the findings and determination of the park board in Resolution 2250 and of the city council in Ordinance 113933 are untrue and do not comply with the requirements of section 170, subdivision (d) of the charter in the following particulars: the removal of the portion of Elysian Park from the jurisdiction of the park board for use as a highway did not cause the remaining 27.67 acres to be unsuitable for further use as a public park; Parcel B is not located in the same portion of the city as Parcel A is located; Parcel A is not unsuitable for park purposes; Parcel B is not equal in value and utility to Parcel A, and Parcel B in its present condition is not suitable for any park purpose.

Appellants contend that res judicata is not a proper defense herein; that the affidavits in support of the motion for summary judgment are insufficient and do not show a defense of res judicata. They argue that the validity of Resolution 2250 and Ordinance 113933 was not determined in the prior actions, because the judgments in the prior actions had become final before the adoption of the resolution and the enactment of the ordinance, and because the Supreme Court (in the Ruben and Kirshbaum cases) expressly refused to determine whether the city's actions "which are questioned in this case" were valid. The portion of the Ruben and Kirshbaum cases (51 Cal.2d 857 [337 P.2d 825]), so referred to by appellants, is on page 863 and is as follows: "Kirshbaum contends that a parcel of land in Elysian Park to be conveyed

to the baseball club pursuant to the contract is subject to the control of the city's Department of Recreation and Parks, that under section 393 of the city charter such land may be sold only with the approval of the board or officer having the management of that department, and that no such approval has been obtained. The contention, not determined in the prohibition case [City of Los Angeles v. Superior Court], is premature, because it does not appear that any actual sales or transfers of property to the baseball club have yet been made, and the city still has the opportunity to comply with these requirements of the charter. Moreover, at the time of trial herein, proceedings were pending before the city council to transfer the parcel in question from the jurisdiction of the park department on the ground that freeway construction cut off the property from the balance of Elysian Park, and, if such a transfer is accomplished, consent of the department to a sale will no longer be necessary."

The Resolution 2250 was adopted September 26, 1957, and the Supreme Court rendered its decision in those two cases on April 21, 1959. It thus appears that the resolution was adopted before those decisions were rendered. As above stated, Resolution 2250 was, pursuant to stipulation in those cases, an exhibit in the trial court and the Supreme Court. That resolution of the park board recited in part as follows: "Be it Resolved: 1. The Board . . . does hereby find and determine that the lands described in Parcel A in the description hereto attached [being the 27.67 acres referred to as Parcel A in this opinion] that remain after portions of an existing park, to wit, Elysian Park, have been removed from the jurisdiction of the Board by reason of their dedication and use for . . . freeway and highway purposes, incompatible with park use, are unsuitable for further use as a public park. 2. The Board . . . does hereby find and determine that the lands described in Parcel B in the description attached hereto [being the Rose Hill land referred to as Parcel B in this opinion] . . . are lands of an area at least equal to the lands described in Parcel A, and that said two parcels are in the same portion of the city. 3. That the Board . . . does hereby approve the site described in Parcel B as a park site. . . . Be It Further Resolved That the Secretary [of the Board] . . . be . . . directed to forward a copy of this Resolution to the Honorable City Council with the following request and recommendation: 1. That the Honorable Council approve this Resolution by ordinance. 2. That the

. . . Council consider, and . . . find and determine that the remaining lands described in Parcel A . . . are unsuitable for further use as a public park, and that the lands described in Parcel B . . . are at least equal to the lands . . . in said Parcel A, and that the two parcels . . . are in the same portion of the City. 3. That the lands described in Parcel B be set apart and dedicated as a public park by the Honorable Council.'' On June 26, 1959, the city council passed Ordinance 113933 approving Resolution 2250 of the park board, and stating that (by reason of highway construction referred to in the resolution) the jurisdiction and control of Parcel A described in the resolution (the 27.67 acres) are transferred from the park board to the department of public works, and that jurisdiction and control of Parcel B described in the resolution are transferred to the park board, and said Parcel B is set apart and dedicated as a public park. It does appear, as appellants state, that said Ordinance 113933 (approving the resolution) was enacted after the judgments in the three prior actions became final. One of the appellants' principal arguments is, as above indicated, that the Supreme Court expressly refused to determine whether the city's actions ''which are questioned in this case'' were valid, that is, the actions relative to transferring the 27.67 acres from the jurisdiction of the park board to the public works board. That argument is based upon the above-quoted statement of the Supreme Court (in the Ruben and Kirshbaum cases) relative to a contention in those cases being ''premature.'' The contention which was characterized as premature was Kirshbaum's contention to the effect that the 27.67 acres to be conveyed to the baseball club pursuant to the contract is subject to the control of the park board and that under section 393[1] of the charter such land may be sold only with the approval of the park board, and such approval has not been obtained. The Supreme Court, immediately after referring specifically to that contention, said: ''The contention, not determined in the prohibition case, is premature, because it does not appear that any actual sales or transfers of property to the baseball club have yet been made, and the city still

[1]Section 393 of the Charter provides: ''Any real property owned by the City of Los Angeles that is no longer required for the use of the city may, subject to the limitations and exceptions elsewhere prescribed in this charter, be sold . . .; provided, however, that any real property proposed to be sold that is under the control of any board or commission . . . shall not be sold except at the request or with the approval of the board. . . .''

has the opportunity to comply with these requirements of the charter." Section 393, so referred to in that opinion and quoted in the footnote herein, is a section of general application to any city property, and the section provides that such property may not be sold without the approval of the board which has control of the property. It is to be noted also that said section 393 provides that such a sale is "subject to the limitations and exceptions elsewhere prescribed in the charter." The plaintiffs in the present case, refer specifically to section 170 of article XVI of the charter and they assert that the findings in Resolution 2250 and Ordinance 113933 are not sufficient to comply with the requirements of section 170, subdivision (d) of the charter. The reference by the Supreme Court to prematurity was, as above indicated, a reference to the contention of Kirshbaum to the effect that under section 393 a sale of park land required the approval of the park board, and that the city had not obtained the approval required under that section. As above noted, the Supreme Court said in effect with respect to such contention as to approval by the park board, that the contention was premature because no sale had been made by the city and the city still had the opportunity to comply with the requirement of said section 393 by obtaining the approval of the park board. It is apparent that the reference to prematurity was not a reference to section 170 or to section 170, subdivision (d), which the present plaintiffs refer to specifically. (The provisions of section 170 are shown above in stating the allegations of plaintiffs' complaint—those provisions are to the effect that the park board has control of parks and its permission is required in order for park land to be used for other purposes, but park land may be excepted from the charter provisions only where a portion of park land has been removed from the park board's jurisdiction by using it for other public purposes and such exception may be made only if the board and council find that the remaining land is unsuitable as a park and if land of equal area is acquired in the same portion of the city and dedicated as a park.) As above stated, Resolution 2250 of the park board was before the Supreme Court and that resolution showed that proceedings under said section 170 were pending before the city council to transfer the parcel of 27.67 acres from the jurisdiction of the park board because that parcel, which remained after other portions had been taken for highway purposes, was unsuitable for park purposes. It is to be noted that immediately

after the Supreme Court said that the contention as to approval by the park board under section 393 was premature (because the city still had an opportunity to obtain such approval), that court said: "Moreover, at the time of trial herein, proceedings were pending before the city council to transfer the parcel in question [27.67 acres] from the jurisdiction of the park department on the ground that freeway construction cut off the property from the balance of Elysian Park, and, if such a transfer is accomplished, consent of the department to a sale will no longer be necessary." Under the provisions of Ordinance 113933 the said Resolution 2250 of the park board was approved by the council and the transfer of said parcel of 27.67 acres from the jurisdiction of the park board to the jurisdiction of the public works board was accomplished. It thus appears that the effect of the Supreme Court ruling was (in view of the later circumstances that the city council transferred the parcel to the public works board) that the consent of the park board was not necessary in connection with the proposed contract between the city and the baseball club.

As above stated, appellants also contend that since Ordinance 113933 was not in existence when the decisions in the three prior cases were rendered, the doctrine of res judicata was not applicable to the issue presented herein by appellants to the effect that the findings of the council, as shown in that ordinance, are not sufficient to comply with section 170 of the Charter. Resolution 2250 of the park board which was before the Supreme Court contained findings with respect to the transfer which were the same as the findings in the ordinance with respect to the transfer. It thus appears that the effect of the transfer proceedings based on those findings of the park board was for the consideration of the court. The factual matters regarding those findings could have been inquired into on the trial of the prior cases. The decisions of the Supreme Court in the prior cases, upholding the validity of the proposed contract between the city and the baseball club, included an implied determination of the legal sufficiency of the findings in the resolution. That determination as to those findings is applicable to the same findings which are in the ordinance. In *Price* v. *Sixth District Agricultural Assn.*, 201 Cal. 502 [258 P. 387], the plaintiff sought to obtain a judgment that a contract to build a public stadium was illegal or that the terms or conditions thereof were unlawful or unenforceable. It was held therein that the plaintiff

(who sued as a taxpayer and citizen) was precluded from questioning the legality or enforceability of the contract on any ground that had been or could have been urged in a prior proceeding regarding the validity of a prior form of the contract. After that prior proceeding, changes were made in the form of contract that had been involved therein. In the subsequent case (201 Cal. 502) the court said at pages 509 and 510: "Appellants, admitting the general rule [that contentions which could have been asserted in prior litigation may not be asserted in subsequent litigation], however, seek to avoid the effect thereof by asserting that the causes of action are not the same; that the contract of June 21, 1920, made the subject of judgment by the district court of appeal on February 23, 1921, is not the basis of the cause of action here involved predicated upon the contract of November 15, 1921. But it is undisputed that the latter contract is but a recast of the former and that the subject matter covered by the two contracts is the same. The issue tendered by both agreements is as to the power of the city or county to contract in the same way respecting identical subject matter. In that sense the two causes of action are identical. Appellants make no attack upon the contract of November 15, 1921, because of the amendments thereto. They assert no infirmity in the latter contract that is not likewise applicable, if correct, to the former. In order to overthrow the latter contract, it is necessary to overturn *in toto* the former. Indeed, it is axiomatic that if the former contract is legal and valid, the latter is valid also." The doctrine of res judicata is applicable to the issue regarding the findings of the council as shown in Ordinance 113933.

Appellants argue that defendants' affidavits are irrelevant to the allegations of the complaint; there is no reference in those affidavits to plaintiffs' allegations attacking the validity of the ordinance, nor do defendants allege any facts showing that the city has complied with section 170 of the charter; defendants are required to state facts which demonstrate that the allegations of the complaint cannot be proved; defendants' affidavits do not controvert any of the allegations of the complaint; plaintiffs' affidavits state facts showing that the findings and determinations in Ordinance 113933 are untrue and do not comply with section 170 of the charter; plaintiffs' complaint and affidavits attack Resolution 2250 and Ordinance 113933 on the grounds that they do not comply with section 170 of the charter and were adopted by the park board and city council in bad faith in that their findings and

determinations were untrue, and therefore were in excess of jurisdiction and were made by abuse of discretion. As above indicated, the motions for summary judgment were based solely upon the defense of res judicata. As stated by plaintiffs, their complaint and affidavits ''raise issues of fact relative to the veracity and validity of the findings and determinations of fact'' in Ordinance 113933. The material point, however, under defendants' motion and their affidavits in support thereof, is not whether defendants' affidavits establish that the allegations of plaintiffs' complaint cannot now be proved, but the material point is whether defendants' affidavits state uncontradicted facts with respect to the pleadings, issues, exhibits, proceedings and judgments in the prior cases which establish the defense of res judicata. The parcel of 27.67 acres was involved in the prior cases—the complaint in the Ruben case alleged, and the pretrial statement recited, that the land to be conveyed under the proposed contract included the 27.67 acres. In the Kirshbaum case, Kirshbaum presented testimony regarding Resolution 2250 which pertained to the same 27-acre parcel. Also in the Kirshbaum case, by stipulation, that resolution was placed before the Supreme Court. The resolution contained the findings and determinations of the park board (1) regarding the unsuitability of said 27-acre parcel (Parcel A) for park use after other portions of the park had been taken for highway purposes, and (2) regarding suitability of the new parcel (Parcel B) for park purposes. Under such circumstances, matters regarding the veracity and validity of those findings and determinations, and matters regarding the alleged bad faith and abuse of discretion of the park board could have been the subject of inquiry in the trials of the prior cases. ▮ In *Price* v. *Sixth District Agricultural Assn., supra,* it was said at pages 510 and 511: ''If the existence, validity or construction of a contract . . . has been adjudicated in one action it is *res judicata* when it comes again in issue in another action between the same parties, though the immediate subject matter of the two actions be different. . . .

▮ In other words when an issue has been litigated all inquiry respecting the same is foreclosed, not only as to matters heard but also as to matters that could have been heard in support of or in opposition thereto. This rule has been aptly stated as follows: 'It is important to note in this connection, however, that even though the causes of action be different, if the second action involves a right, title or issue as to which the judgment in the first action is a conclusive

adjudication, the estoppel so far as that right, title or issue is concerned must likewise extend to every matter which was or might have been urged to sustain or defeat the determination actually made.' ''

Identity of parties in the successive actions is a requirement in the application of the doctrine of res judicata.

Where the plaintiff in the prior action commenced the action, as a citizen and taxpayer on behalf of himself and others similarly situated, to determine a matter of general public interest, and where a different plaintiff in the succeeding action commenced that action as a citizen and taxpayer to determine the same matter of public interest, there is identity of parties within the requirement under the doctrine of res judicata. (See *Price* v. *Sixth District Agricultural Assn., supra,* 201 Cal. 502, 514-515 [258 P. 387].)

A motion for summary judgment is a proper procedure by which to raise the defense of res judicata. (*Gosnell* v. *Webb,* 66 Cal.App.2d 518 [152 P.2d 463] ; *Olmstead* v. *Riley,* 135 Cal.App.2d 117, 121-122 [286 P.2d 579].)

In the present case, there was no triable issue of fact with respect to the defense of res judicata.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 10, 1961.